UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
: 
BEAZLEY INSURANCE COMPANY, INC.,    :   Civil Action No.: 15-cv-5119
:
           Plaintiff,              :
:
  -against-                          :   **COMPLAINT**
:
ACE AMERICAN INSURANCE COMPANY,     :
and ILLINOIS NATIONAL INSURANCE     :
COMPANY,                            :
:
           Defendants.             :
:
------------------------------------- X

      Plaintiff Beazley Insurance Company, Inc. ("Beazley"), by its attorneys, Troutman Sanders LLP, as and for its Complaint against the above-named defendants, alleges as follows:

## NATURE OF THE ACTION

      1.     This matter is an insurance coverage dispute pertaining to an underlying class action filed against, among others, NASDAQ OMX Group, Inc. and NASDAQ Stock Market, LLC (collectively, "NASDAQ") by past and current shareholders of Facebook, Inc.

      2.     Notice of the class action was provided on behalf of NASDAQ and the two NASDAQ officers named as defendants in the class action, Robert Greifeld and Anna Ewing (the "NASDAQ Officers"), to several insurers, including Beazley and Defendants ACE American Insurance Company ("ACE") and Illinois National Insurance Company ("Illinois National"). NASDAQ and the NASDAQ Officers are collectively referred to as the "NASDAQ Parties." ACE and Illinois National are collectively referred to as the "Defendants."

      3.     Beazley responded to that notice by issuing a reservation of rights letter which outlined potential coverage issues under the policy it had issued to NASDAQ OMX Group, Inc.

It did so even though it believed that most, if not all, of the claims against the NASDAQ Parties in the underlying class action were not covered by its policy.

4. Conversely, ACE denied coverage for the NASDAQ Parties despite the fact that all or most of the claims in the underlying class action fall squarely within the Insuring Agreements of its policy and are not subject to any exclusion. Beazley is informed and believes that Illinois National followed the decision of ACE and that it also did not defend or indemnify the NASDAQ Parties in connection with the class action.

5. Given the denials of coverage, when the NASDAQ Parties approached Beazley regarding an opportunity to settle the class action, Beazley entered into an agreement with the NASDAQ Parties whereby it agreed to fund part of the settlement by paying the full $15 million limits of liability of its policy. In connection with this agreement, the NASDAQ Parties assigned all contractual and extra-contractual claims they have against ACE and Illinois National in connection with their respective denials of coverage for the underlying class action.

6. Accordingly, through this action, Beazley seeks an adjudication that the NASDAQ Parties are entitled to coverage for the underlying class action under the ACE and Illinois National insurance policies and it seeks repayment from ACE and Illinois National for all amounts Beazley has or will pay on behalf of the NASDAQ Parties in connection with the underlying class action.

**PARTIES**

7. Plaintiff Beazley is a Connecticut corporation with its principal place of business in the state of Connecticut.

8. Defendant ACE is a Pennsylvania corporation with its principal place of business in the state of Pennsylvania. ACE transacts the business of insurance in the state of New York.

9. Defendant Illinois National is an Illinois corporation with its principal place of business in the state of Illinois. Illinois National transacts the business of insurance in the state of New York.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties, as Beazley is a citizen of Connecticut and ACE and Illinois National are citizens of Pennsylvania and Illinois, respectively. The amount in controversy exceeds the minimum $75,000, exclusive of interest and costs, and an actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

11. This Court has personal jurisdiction over the Defendants in that the Defendants transact substantial business, including business relevant to the dispute at issue in this matter, in the state of New York. Among other things, Defendants issued their respective insurance policies at issue in this matter to NASDAQ OMX Group, Inc. in the state of New York.

12. Venue is proper in this Court because the underlying action upon which this matter is based is pending in this Court, and the insurance policies at issue were issued to NASDAQ OMX Group, Inc., who resides in this district.

## FACTUAL BACKGROUND

### The Consolidated Class Action

13. This action pertains to the insurance coverage available for the NASDAQ Parties in connection with a class action lawsuit captioned *In re Facebook, Inc. Securities and Derivative Litigation, NASDAQ Actions*; MDL No. 12-2389 (S.D.N.Y.) (the "Consolidated Class

Action").[1]  The operative version of the Complaint in the Consolidated Class Action is the Consolidated Amended Complaint (the "CAC").  A copy of the CAC is attached hereto as Exhibit "A" and incorporated herein by reference.

14.    The CAC is comprised of two classes, one asserting claims for securities fraud (the "Securities Class") and one asserting claims based on negligence (the "Negligence Class"). The claims of each class relate to the NASDAQ Parties' alleged acts and omissions relating to the initial public offering of Facebook, Inc.'s stock (the "Facebook IPO").

15.    The CAC was filed on behalf of a putative class of all persons "that entered pre-market and aftermarket orders to purchase and/or sell the common stock of Facebook Inc. on May 18, 2012 in connection with [the Facebook IPO] and who suffered monetary losses" as a result of the NASDAQ Parties' alleged acts and omissions.

16.    In the CAC, the plaintiffs assert various claims for securities fraud and negligence based on the NASDAQ Parties' alleged statements and advertisements related to the capabilities of NASDAQ's trading platform and related services and/or the inadequate performance of NASDAQ's technology and trading platform during the Facebook IPO.

17.    The plaintiffs claim that the NASDAQ Parties' alleged acts and omissions, before and during the Facebook IPO, caused the class plaintiffs losses in excess of $500 million

18.    With regard to the Securities Class, the CAC alleges that the NASDAQ Parties committed securities fraud based on statements and/or omissions made both in the months

---

[1] The following matters were consolidated to form the Consolidated Class Action: *Goldberg v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-04054, S.D.N.Y. (the "*Goldberg* matter"); *Steinman v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-04600, S.D.N.Y. (the "*Steinman* matter"); *Roberick v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-04716, S.D.N.Y. (the "*Roberick* matter"); *Alfonso v. NASDAQ Stock Market, LLC*, Case No. 12-cv-04201, S.D.N.Y. (the "*Alfonso* matter"); *Yan v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-04200, S.D.N.Y. (the "*Yan* matter"); *Amin v. NASDAQ Stock Market, LLC*, Case No. 12-cv-04403, S.D.N.Y. (the "*Amin* matter"); *Levy v. NASDAQ Stock Market, LLC*, Case No. 12-cv-04315, S.D.N.Y. (the "*Levy* matter"); *First NY Securities v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-05630, S.D.N.Y. (the "*First NY Securities* matter"); *Eagan v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-06882, S.D.N.Y. (the "*Eagan* matter"); and *McGinty v. NASDAQ OMX Grp., Inc.*, Case No. 12-cv-05543, S.D.N.Y. (the "*McGinty* matter").

preceding the Facebook IPO and during the IPO. The CAC specifically provides that, during the period before the IPO, which included the period in which NASDAQ "aggressively competed" with the New York Stock Exchange to list Facebook, NASDAQ made material statements that its technology and trading platform were "robust, reliable, and completely capable of properly handling the Facebook IPO."

19. According to the plaintiffs, these and other similar statements by the NASDAQ Parties were materially false or misleading because, based on technical problems revealed during testing, they knew or recklessly disregarded the possibility that NASDAQ's software systems "could not properly handle the trading volume expected for the Facebook IPO."

20. The CAC also contains allegations that the NASDAQ Parties failed to correct these materially false or misleading statements after becoming aware of the "significant technical problems long before the [Facebook IPO]." They also allege that, as a "scheme" to defraud and deceive, materially false and misleading statements and omissions of material facts were made during the Facebook IPO, which included the failure to disclose technical and software-related issues and NASDAQ's decision to switch to an inadequate back-up system.

21. Based on these allegations, the Securities Class asserts two securities fraud counts; one asserted against NASDAQ and the NASDAQ officers pursuant to section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder and a second asserted against the NASDAQ Officers as "controlling persons" under section 20(a) of the Exchange Act.

22. On information and belief, NASDAQ is fully indemnifying the two NASDAQ Officers named as defendants in the CAC.

23. Like the Securities Class, the Negligence Class bases its negligence claims against NASDAQ on alleged acts and/or omissions both during the period leading up to the Facebook IPO and during the Facebook IPO. The CAC includes allegations that NASDAQ was negligent in designing trading software before trading began. As for NASDAQ's allegedly negligent conduct during the Facebook IPO, the CAC provides, among other things, that NASDAQ was negligent in its decision not to halt the Facebook IPO when trading issues arose, and in its negligent decision to utilize an inadequate backup system.

24. While the Negligence Class does not join in the fraud allegations of the Securities Class, the Negligence Class asserts that they relied on the NASDAQ Parties' alleged statements related to the purported capabilities of the NASDAQ trading platform and claim that these statements established a standard of care, which was allegedly breached.

25. The Negligence Class asserts eight counts of negligence in the CAC – two on behalf of the entire class and six on behalf of sub-classes.

## The Errors and Omissions Liability Policies

26. Beazley issued Excess Insurance Policy No. V15NOP120401 to NASDAQ OMX Group, Inc. for the Policy Period from January 31, 2012 to January 31, 2013 (the "Beazley Excess Policy"). Subject to the Beazley Excess Policy's terms, conditions and exclusions, each of the NASDAQ Parties is an Insured under the Beazley Excess Policy. Subject to its terms, conditions and exclusions, the Beazley Excess Policy provides errors and omissions coverage and has a $15 million Limit of Liability, which is excess of the $15 million limits of liability of a primary policy, discussed below, and also excess of the primary policy's applicable retention. A copy of the Beazley Excess Policy is attached hereto as Exhibit "B" and incorporated herein by reference.

27. The Beazley Excess Policy sits above (*i.e.*, in excess of) a primary errors and omissions insurance policy, policy No. 01-554-10-86, issued by Chartis Specialty Insurance Company ("Chartis") to NASDAQ OMX Group, Inc. for the Policy Period from January 31, 2012 to January 31, 2013 (the "Primary E&O Policy"). Subject to the Primary E&O Policy's terms, conditions and exclusions, each of the NASDAQ Parties is an Insured under the Primary E&O Policy. The Primary E&O Policy has a $15 million Limit of Liability. A copy of the Primary E&O Policy is attached hereto as Exhibit "C" and incorporated herein by reference.

28. With regard to the coverage relevant to this matter, subject to their terms, conditions and exclusions, both the Beazley Excess Policy and the Primary E&O Policy provide coverage for the NASDAQ Parties only for Claims arising "solely in rendering or failing to render Professional Services…." (*See* Primary E&O Policy, Section 1.I).

## The ACE and Illinois National D&O Policies

29. ACE issued ACE Advantage Management Protection Policy No. DON G21666944 010 to NASDAQ OMX Group, Inc. for the Policy Period of January 31, 2013 to January 31, 2014 (the "ACE D&O Policy"). Each of the NASDAQ Parties is an Insured under the ACE D&O Policy. The ACE D&O Policy is a primary Directors and Officers Liability Policy with a $15 million Limit of Liability. A copy of the ACE D&O Policy is attached hereto as Exhibit "D" and incorporated herein by reference.

30. Insuring Agreement B and Insuring Agreement C of the ACE D&O Policy provide as follows:

> B.  **Company** Reimbursement
>
> The **Insurer** shall pay on behalf of the **Company** all **Loss** for which the **Company** has indemnified the **Insured Persons** and which the **Insured Persons** have become legally obligated to pay by reason of a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if elected, the **Extended Reporting**

> **Period**, and reported to the **Insurer** pursuant to the terms of this **Policy**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.
>
> C.     **Company** Liability
>
> The **Insurer** shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay by reason of a **Securities Claim** first made against the **Company** during the **Policy Period** or, if elected, the **Extended Reporting Period**, and reported to the **Insurer** pursuant to the terms of this **Policy**, for any **Wrongful Acts** taking place prior to the end of the **Policy Period**.

[ACE D&O Policy, Section I].

31.     The ACE D&O Policy defines "**Claim**" to include a "written demand for monetary damages" and a "civil … proceeding … for monetary damages." [ACE D&O Policy, Section, II.B, as amended by Endorsement No. 19].

32.     "**Securities Claim**" is defined by the ACE D&O Policy as follows:

> any **Claim**, other than a civil, criminal, administrative or regulatory investigation of a **Company**, which in whole or in part, is:
>
> 1.     brought by one or more securities holders of the **Company**, in their capacity as such, including derivative actions brought by one or more shareholders to enforce a right of the **Company**; or
>
> 2.     alleging a violation of any federal, state, local or foreign regulation, rule or statute, or any common law, regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, or solicitation of any offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale, offer or solicitation involves a transaction with the **Company** or occurs in the open market, including any such **Claim** brought by the Securities and Exchange Commission or any other claimant.
>
> The foregoing Definition of **Securities Claim** shall not include any **Claim** brought by any director, officer, governor, trustee, general counsel, risk manager, manager, member of the board of managers, executive or employee of a **Company** alleging, arising out of, based upon or

> attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of a **Company**.

[ACE D&O Policy, Section II.O, as amended by Endorsement No. 12].

33.     While the ACE D&O Policy contains a professional services exclusion, the exclusion only applies to "*that portion* of **Loss** on account of any **Claim** … by or on behalf of a *customer or client* of the **Company**, alleging, based upon, arising out of, or attributable to the *rendering of or failure to render* professional services."  [ACE D&O Policy, Section III, as amended by Endorsements Nos. 10 and 19, emphasis added].

34.     Illinois National issued Excess Edge Policy No. 01-656-32-59 to NASDAQ for the Policy Period of January 31, 2013 to January 31, 2014 (the "Illinois National D&O Policy"). Each of the NASDAQ Defendants is an Insured under the Illinois National Policy.  The Illinois National D&O Policy includes a $15 million Limit of Liability, which is excess of the Limits of Liability and the retention of the ACE D&O Policy.  A copy of the Illinois National D&O Policy is attached hereto as Exhibit "E" and incorporated herein by reference.

## The Insurance Companies' Coverage Positions

35.      Notice of the CAC was provided on behalf of the NASDAQ Parties to, among other insurers, Chartis, Beazley, ACE and Illinois National.

36.     In response to the notice, Chartis issued a reservation of rights letter and agreed to advance defense costs in connection with the CAC under the Primary E&O Policy.

37.     Similarly, Beazley responded to the notice by issuing a reservation of rights letter which noted, among other things, the excess position of the Beazley Excess Policy.   In addition, Beazley noted that, with regard to the CAC and subject to the Beazley Excess Policy's other terms, conditions and exclusions, coverage was limited to Claims for Wrongful Acts committed "solely in rendering or failing to render Professional Services…."

38. ACE, on the other hand, denied the NASDAQ Parties' request for coverage under the ACE D&O Policy. A copy of its initial denial letter dated October 8, 2013 is attached as Exhibit "F" and incorporated herein by reference. When Beazley obtained a copy of the October 8, 2013 letter and a copy of the ACE D&O Policy, it recognized ACE had wrongfully denied coverage for the CAC and Beazley's counsel wrote a January 26, 2015 letter to Jeffrey Winn with ACE explaining why ACE's denial of coverage was improper. A copy of the January 26, 2015 letter (without enclosures) is attached as Exhibit "G" and incorporated herein by reference. ACE responded to January 26, 2015 letter through its counsel in a letter dated February 27, 2015. In its February 27, 2015 letter, ACE continued to wrongfully deny coverage for the CAC. An accurate copy of ACE's February 27, 2015 letter as well as an accurate copy of Beazley's further response, through counsel, to that letter dated March 9, 2015 are attached as Exhibits "H" and "I," respectively, and are incorporated herein by reference.

39. ACE bases its denial of coverage on the following grounds: (1) some or all of the claims asserted in the CAC do not come within the insuring agreements of the ACE Primary D&O Policy and (2) the claims are subject to a professional services exclusion. Both arguments are without merit.

40. In asserting that the CAC does not fall within the insuring agreements, ACE argues that the Consolidated Class Action is not a **Securities Claim**, as that term is defined in the ACE D&O Policy, and that coverage under its policy is limited to **Loss** arising out of a **Securities Claim**. This argument is incorrect and completely ignores Insuring Agreement B of the ACE D&O Policy, as well as the plain language of the defined term "**Securities Claim**" under Insuring Agreement C of the ACE D&O Policy.

41.     As noted above, Insuring Agreement B of the ACE D&O Policy provides coverage for all "**Loss** for which [NASDAQ] has indemnified the **Insured Persons** and which the **Insured Persons** have become legally obligated to pay by reason of a **Claim** … for any **Wrongful Acts** …." The coverage available under Insuring Agreement B is not limited to "**Securities Claims**." Instead, coverage is available for any "**Claim**," which is broadly defined to include, among other things, a "written demand for monetary damages" and a "civil … proceeding." Given the claims asserted against the NASDAQ Officers in the CAC, it cannot be reasonably disputed that Insuring Agreement B is implicated by the CAC.

42.     ACE's position that Insuring Agreement C, which provides so-called entity coverage for "all **Loss** for which the **Company** becomes legally obligated to pay by reason of a **Securities Claim**," is not implicated is also incorrect. As noted above, the ACE D&O Policy expressly defines "**Securities Claim**" to include any **Claim** "alleging a violation of any federal, state, local or foreign regulation, rule or statute, or any common law, regulating securities" and it cannot be reasonably disputed that the two Exchange Act claims against NASDAQ in the CAC are such claims. Thus, in addition to Insuring Agreement B, Insuring Agreement C of the ACE Primary D&O Policy is implicated by the CAC. Notably, ACE implicitly acknowledged that Insuring Agreement C was implicated by the CAC in its October 8, 2013 denial letter when it stated only that counts III to X of the CAC did not involve "**Securities Claim**." (October 8, 2014 letter, p. 2, Exhibit "F") In other words, by not referencing counts I and II – which are the counts in the CAC based on sections 10(b) and 20(a) of the Exchange Act – when discussing what claims were not "**Securities Claim**," ACE essentially conceded that, at a minimum, counts I and II qualified as "**Securities Claim**."

43.     Likewise, ACE's argument that coverage for the CAC is precluded by the professional services exclusion, which simply provides coverage is not available for "for *that portion* of **Loss** on account of any **Claim** … by or on behalf of a *customer or client* of [NASDAQ], alleging, based upon, arising out of, or attributable to the *rendering of or failure to render* professional services," is also without merit.  [ACE D&O Policy, Section III, as amended by Endorsements Nos. 10 and 19, emphasis added].  The vast majority, if not all, of the claims asserted in the CAC do not fall within this exclusion because, among other reasons, they are not claims by or on behalf of a customer or client of NASDAQ and because they are based on alleged actions the NASDAQ Parties took to advertise or promote NASDAQ's alleged capabilities which are not professional services.

44.     Beazley is informed and believes that Illinois National followed the decision of ACE and that it also did not defend or indemnify the NASDAQ Parties in connection with the class action.

### The Settlement of the CAC

45.     Throughout February, March and April of 2015, the parties to the Consolidated Class Action engaged in settlement discussions.  In the course of those discussions, the NASDAQ Parties requested settlement authority that implicated the limits of liability of the Beazley Excess Policy.  The settlement authority requested would have also implicated the limits of liability of ACE D&O Policy had ACE not denied and continued to deny coverage for the Consolidated Class Action.  Beazley advised ACE of the requests for authority that would have implicated the limits of liability of the ACE D&O Policy but for the wrongful denial.  ACE, however, continued to deny coverage and refused to contribute toward the defense or indemnification of the NASDAQ Parties.

46. Beazley is informed and believes that Illinois National, which had also failed to accept potential coverage for the claims asserted against the NASDAQ Parties in the CAC, improperly failed to contribute toward the defense or indemnification of the NASDAQ Parties.

47. On or about April 22, 2015, the parties to the Consolidated Class Action entered into a Memorandum of Understanding for the settlement of the Consolidated Class Action. Thereafter, on or about May 22, 2015, a Stipulation of Settlement was filed with the court in the Consolidated Class Action. In connection with the settlement of the Consolidated Class Action, in order to protect the interests of the NASDAQ Parties, Beazley agreed to pay the full $15 million limits of liability of the Beazley Excess Policy toward the settlement. ACE has not paid or agreed to pay anything under the ACE D&O Policy toward the settlement, and Illinois National has not paid or agreed to pay anything under the Illinois National D&O Policy toward the settlement.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief - Defense Cost Coverage)**

48. Beazley repeats and realleges each and every allegation contained in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. It is Beazley's position that the NASDAQ Parties are entitled to coverage under the ACE D&O Policy and/or the Illinois National D&O Policy for Defense Costs they have or will incur in connection with the CAC, including amounts incurred by NASDAQ to indemnify the NASDAQ officers named as defendants in the CAC for Defense Costs those officers have or will incur. Defendants contend that no such coverage is available under their respective policies, and have denied coverage for the NASDAQ Parties.

50. By virtue of the Defendants' improper denials of coverage, the Limits of Liability for the Beazley Excess Policy have been implicated and eroded. Had the Defendants agreed to

fulfill their obligations to reimburse Defense Costs incurred by the NASDAQ Parties in connection with the CAC, the Limits of Liability of the Beazley Excess Policy would not have been implicated or eroded, or would be implicated or eroded to a lesser degree.

51. An actual and judiciable controversy exists between Beazley and the Defendants regarding whether coverage for Defense Costs is available for the NASDAQ Parties under the ACE D&O Policy and/or the Illinois National D&O Policy in connection with the CAC.

52. Accordingly, Beazley is entitled to a judicial declaration that the NASDAQ Parties are entitled to coverage for Defense Costs they have or will incur in connection with the CAC under the ACE D&O Policy and the Illinois National D&O Policy.

## SECOND CAUSE OF ACTION
### (Declaratory Relief - Indemnity Coverage)

53. Beazley repeats and realleges each and every allegation contained in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. It is Beazley's position that the NASDAQ Parties are entitled to indemnity coverage under the ACE D&O Policy and/or the Illinois National D&O Policy for any settlement or judgment reached in connection with the CAC, including amounts incurred by NASDAQ to indemnify the NASDAQ officers for settlements and judgments associated with the Consolidated Class Action. The Defendants contend that no such coverage is available under their respective policies, and have denied coverage to the NASDAQ Parties.

55. By virtue of the Defendants' improper denials of coverage, the full Limits of Liability for the Beazley Excess Policy have been or soon will be paid in connection with settlements and/or judgments related to the CAC. Had the Defendants agreed to fulfill their respective indemnity obligations, including payments of settlements and/or judgments associated

with the CAC, the Limits of Liability of the Beazley Excess Policy would not be implicated or eroded, or would have been implicated or eroded to a lesser degree.

56. An actual and judiciable controversy exists between Beazley and the Defendants regarding whether indemnity coverage is available to the NASDAQ Parties under the ACE D&O Policy and the Illinois National D&O Policy in connection with the CAC.

57. Accordingly, Beazley is entitled to a judicial declaration that that the NASDAQ Parties are entitled to indemnity coverage in connection with the CAC under the ACE D&O Policy and the Illinois National D&O Policy.

## THIRD CAUSE OF ACTION
### (Implied/Common Law Indemnity)

58. Beazley repeats and realleges each and every allegation contained in Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Pursuant to the terms of their respective policies, ACE and Illinois National are obligated to pay Defense Costs, settlements and judgments on behalf of the NASDAQ Parties in connection with the CAC.

60. Despite these obligations, ACE and Illinois National have denied coverage to the NASDAQ Parties in connection with the CAC.

61. By virtue of the positions taken by ACE and Illinois National, Beazley has paid or agreed to pay amounts on behalf of the NASDAQ Parties, the mutual Insureds of Beazley and the Defendants, for which the Defendants, individually or collectively, are principally liable.

62. Beazley is therefore entitled to indemnification from ACE and/or Illinois National for amounts Beazley incurs in connection with the CAC that should have been paid by ACE and/or Illinois National.

## FOURTH CAUSE OF ACTION
### (Contribution)

63. Beazley repeats and realleges each and every allegation contained in Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. While it is Beazley's position that it has no obligation to the NASDAQ Parties under the Beazley Policy in connection with the CAC, in the alternative, Beazley avers that Beazley and the Defendants insured the same risk in that they both are obligated to pay defense costs and indemnify the NASDAQ Parties in connection with the CAC.

65. The Beazley Policy contains an "other insurance" provision stating that it is excess to the ACE D&O Policy and the Illinois National D&O Policy, while the ACE D&O Policy and the Illinois National D&O Policy contain an "other insurance" provision stating that they are excess to the Beazley Policy.

66. Beazley has or will pay amounts on behalf of the NASDAQ Parties in connection with the CAC for which ACE and/or Illinois National share a mutual obligation.

67. Beazley is entitled to contribution from ACE and/or Illinois National for the amounts it has or will pay on behalf of the NASDAQ Parties in connection with the CAC.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

68. Beazley repeats and realleges each and every allegation contained in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. The NASDAQ Parties have assigned Beazley their contractual rights and extra-contractual rights against ACE and Illinois National related to the Consolidated Class Action.

70. The ACE D&O Policy and the Illinois National D&O Policy are valid and enforceable written contracts that afford insurance coverage to the NASDAQ Parties for the claims asserted in the Consolidated Class Action.

71. The NASDAQ Parties and Beazley have made written demands that ACE acknowledge coverage under the ACE D&O Policy for the claims asserted against the NASDAQ Parties in the Consolidated Class Action,. The NASDAQ Parties have also made written demand(s) that Illinois National acknowledge coverage under the Illinois National D&O Policy for the claims asserted against the NASDAQ Parties in the Consolidated Class Action.

72. The NASDAQ Parties have satisfied all terms and conditions of the ACE D&O Policy and the Illinois National D&O Policy that apply to them, except to the extent that ACE and/or Illinois National prevented them from performing and/or they were excused from performing under the ACE D&O Policy and/or the Illinois National D&O Policy.

73. ACE has breached the ACE D&O Policy and Illinois National has breached the Illinois National D&O Policy by, among other things, wrongfully:

  a. Delaying and refusing payment of the NASDAQ Parties' Defense Costs associated with the Consolidated Class Action;

  b. Asserting that they are not required to fund the NASDAQ Parties' defense and/or to indemnify the NASDAQ Parties with regard to the claims asserted against the NASDAQ Parties in the Consolidated Class Action;

  c. Denying the NASDAQ Parties the right to the benefits to which they are entitled under the ACE D&O Policy and the Illinois National D&O Policy, respectively;

    d.  Taking coverage positions with regard to the Consolidated Class Action that are contrary to controlling law;

    e.  Preferring their own interests over the interests of the NASDAQ Parties;

    f.  Basing their respective claim-handling decisions on the desire to reduce or avoid their obligations to the NASDAQ Parties; and

    g.  Failing to properly investigate the claims asserted against the NASDAQ Parties in the Consolidated Class Action and the availability of coverage for those claims under the ACE D&O Policy and the Illinois National D&O Policy, respectively.

74. By breaching the ACE D&O Policy and the Illinois National D&O Policy, ACE and Illinois National, respectively, waived and/or are estopped from asserting their rights under their respective policies.

75. As a direct and proximate result of ACE's breaches of the ACE D&O Policy and Illinois National's breaches of the Illinois National D&O Policy, the NASDAQ Parties have been damaged in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Beazley requests that the Court enter judgment in its favor against Defendants as follows:

A. On the First Cause of Action, a judicial declaration that the ACE D&O Policy and the Illinois National D&O Policy provide Defense Cost coverage to the NASDAQ Parties in connection with the CAC;

-19-

      B.      On the Second Cause of Action, a judicial declaration that the ACE D&O Policy and the Illinois National D&O Policy provide indemnity coverage to the NASDAQ Parties for settlements and/or judgments reached in connection with the CAC;

      C.      On the Third Cause of Action, indemnity from ACE and/or Illinois National for some or all of the amounts incurred by Beazley on behalf of the NASDAQ Parties in connection with the CAC in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

      D.      On the Fourth Cause of Action, contribution from ACE and/or Illinois National for their rightful shares of all amounts incurred by Beazley on behalf of the NASDAQ Parties in connection with the CAC in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

      E.      On the Fifth Cause of Action, general, consequential, and compensatory damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

      F.      Prejudgment interest;

      G.      Costs of suit and attorneys' fees; and

      H.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Beazley demands a jury trial for all claims properly tried to a jury

Dated: June 30, 2015  
       New York, New York

TROUTMAN SANDERS LLP

By: _____  
Matthew J. Aaronson  
875 Third Avenue  
New York, NY 10022  
(212) 704-6000  
Matthew.aaronson@troutmansanders.com

Kevin F. Kieffer (*Pro Hac Vice Petition to Follow*)

TROUTMAN SANDERS LLP  
5 Park Plaza  
Suite 1400  
Irvine, California 92614  
Phone: (949) 622-2708  
Fax: (949) 769-2056  
Email: kevin.kieffer@troutmansanders.com

*Attorneys for Plaintiff*  
*Beazley Insurance Company, Inc.*